Kathleen M. Paustian (SBN 3785)
GORDON & REES LLP
3700 Howard Hughes Parkway, Suite 100
Las Vegas, NV  89169
Telephone: 702.577.9300
Facsimile:  702.255.2858
Email:  kpaustian@gordonrees.com

Annette A. Idalski
*Admitted Pro Hac Vice*
CHAMBERLAIN HRDLICKA WHITE
WILLIAMS & AUGHTRY
191 Peachtree Street, NE, 34th Floor
Atlanta, GA  30303
Telephone: 404.658.5386
Facsimile:  404.659.1852
Email:  annette.idalski@chamberlainlaw.com

Attorneys for Defendant COX
COMMUNICATIONS LAS VEGAS, INC.

# UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL PHELPS, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>COX COMMUNICATIONS LAS VEGAS, INC.,<br><br>Defendant. | Case No. 2:11-cv-00801-PMP-LRL<br><br><br>**DEFENDANT COX COMMUNICATIONS LAS VEGAS, INC.'S MOTION FOR PARTIAL RECONSIDERATION OF THIS COURT'S ORDER DATED DECEMBER 22, 2011 [DKT. # 35]** |

Defendant Cox Communications Las Vegas, Inc. ("Cox") hereby submits its Motion for Partial Reconsideration of this Court's Order Dated December 22, 2011 [Dkt. # 35].  This Motion is supported by the following memorandum of points and authorities and exhibits thereto, the pleadings and papers on file in this case, and any such further argument as this Court deems necessary.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION**

Cox respectfully requests that this Court reconsider its Order dated December 22, 2011 <u>only</u> as to its award of attorneys' fees.  Cox believes that it had a reasonably objective basis for removal based on a number of factors and unique circumstances.

Most importantly, Cox's sole basis for filing its Petition for Removal was to expedite this litigation by placing it before the only Court that had ever actually ruled on the sole claim in this lawsuit – *e.g.*, whether a cable company, such as Cox, is subject to N.R.S. § 608.150.  Consistent with its intent, Cox immediately filed its Motion for Judgment on the Pleadings hoping to dispose of this case in short order.  The congressional intent behind awarding attorneys' fees under the removal statute, 28 U.S.C. § 1447(c), is to deter delay by the removing party.  Based on Cox's actions, it is clear that the last thing Cox intended was for this case to be delayed or for either party to bear additional costs.  It is unfair to punish Cox where there is no evidence that it intended to delay this case.  It is an injustice to require Cox to pay Phelps's attorneys' fees for trying to expeditiously dispose of a frivolous claim that should have never been brought in the first place.

Second, Cox reasonably believed, based on objective facts, that it could meet the amount in controversy; otherwise, it would not have attempted removal.  District courts within the Ninth Circuit have found that a complaint which is silent or unclear as to the amount in controversy can be a basis, in whole or in part, for declining to award attorneys' fees.  This is the case here.  The Court's Order states that Cox did not have a reasonable basis for removal based, in part, on Phelps's demand for $6,000 to $9,000 in damages.  [Dkt. # 35, Dec. 22, 2011 Order, pp. 6, 9.]  But, at the time of removal, Phelps's complaint was silent as to the amount of damages he sought for unpaid wages.  [*See* Dkt. # 1, Ex. A, Compl.]  It was not until <u>after</u> Cox removed that Phelps advised that he was seeking "probably about $6,000 and certainly not greater than $9,000."  [Dkt. #16, p. 3.]  Cox did not have knowledge of this fact at the time of removal, which is when the "objectively reasonable basis" test is determined.

Although attorneys' fees should not have been awarded based on the silent and unclear

Complaint alone, Cox had other objectively reasonable bases to remove.  At the time of removal, **Cox looked to its history with the Valdez Lawsuit and determined that it could easily meet the amount in controversy requirement.  Valdez and Phelps have the exact same claims because, according to Phelps, Cox's liability for damages includes, via N.R.S. § 608.150, the underlying Fair Labor Standards Act ("FLSA") claim and N.R.S. § 608.018 and N.R.S. § 608.040 claims filed against MC Communications.  A comparison of the complaints of Valdez and Phelps reveal they are identical.  Valdez made an offer to settle his individual claims against only Cox, exclusive of the other defendants, for $300,000.   Courts consider this evidence of the amount in controversy, and for this reason, Cox clearly had an objectively reasonable basis for removal because Phelps will more likely than not seek the same individual damages as Valdez given they have the same claims against the same defendant.**  Cox researched Phelps's wages and the method of payment by contacting his employer, MC Communications, and determined that his alleged damages in both actions – including unpaid minimum wages, unpaid overtime, liquidated damages and allegations of willfulness and attorneys' fees – could be very similar to Valdez. Valdez's offer of settlement of $300,000 is more than three times the required amount in controversy ($75,000) and does not specify what amount is for damages and what amount is for attorneys' fees.

Finally, there is a misunderstanding with respect to Cox's argument as to attorneys' fees. Phelps's primary argument in his remand motion incorrectly asserted that Cox **could not include any amount of attorneys' fees in its calculation of the amount in controversy at all** because no statute allegedly applied to class action litigation.   In response, Cox merely refuted Phelps's argument by making the sole point that attorneys' fees **could be included** in the amount in controversy.  In doing so, Cox pointed generally to *Gibson*, a case Phelps cited.  In his Reply brief, Phelps twisted Cox's argument and accused Cox of rejecting apportionment and misstating *Gibson*. However, Cox said nothing about apportionment.  The only point Cox was trying to make was that it could include attorneys' fees pursuant to statute in a class action case and that Phelps's interpretation of the law that it could not do so was incorrect.  Cox was concerned about Phelps's trickery when it first read his Reply brief and should have filed a sur-reply at that time to clarify its position.

For all of these reasons set forth more fully below, Cox respectfully requests that the Court reconsider its December 22, 2011 Order and decline to award attorneys' fees to Phelps.

## II.    PROCEDURAL HISTORY

It is important to address the Valdez Lawsuit in conjunction with Phelps's lawsuits given that the Valdez Lawsuit contains the exact claims as this action (and the underlying action against MC Communications for which Phelps contends Cox is liable) and is the basis for this removal for all of the reasons set forth herein.

### A.    The Valdez Lawsuit

On August 18, 2009, Plaintiff's counsel filed the Valdez Lawsuit against Cox for unpaid wages on behalf of their client, Joseph Valdez, under the FLSA, N.R.S. § 608.018, N.R.S. § 608.040, and N.R.S. § 608.150.  (*See* Valdez Compl., at Exhibit A hereto; Valdez Am. Compl., at Exhibit B hereto.)

As to the N.R.S. § 608.150 claim, Valdez alleged that he was employed by cable installation companies which contracted with Cox "to install, construct, maintain or modify, various cable television service, computer internet (DSL) service and telephone service installations." (Valdez Compl. ¶¶ 17, 19; Valdez Am. Compl. ¶¶ 17, 19.)  Valdez further alleged that the cable installation companies failed to pay him overtime, and alleged that Cox was liable because:  "[p]ursuant to Nevada Revised Statutes § 608.150, the defendant, Cox, was acting as a general, or superior contractor, for the plaintiff's installation or construction services by engaging the…subcontractors to perform such installation or construction services and is liable to the plaintiff for all unpaid wages owed for performing such services." (Valdez Compl. ¶ 40; Valdez Am. Compl. ¶ 40.)

N.R.S. § 608.150(1), the statute upon which Valdez relied, provides:

> Every original contractor making or taking any contract in this State for the <u>erection, construction, alteration or repair</u> of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS.

*Id.* (emphasis added).  Because Cox is not in the construction business or any other business that

would trigger the applicability of N.R.S. § 608.150, Cox successfully moved for summary judgment on this claim.  In dismissing Valdez's N.R.S. § 608.150 claim, this Court stated:

> **[A] plain reading of the statute entitles Defendant Cox to the relief requested**.   NRS § 608.150 is **expressly limited** to original contractors engaged in the "erection, construction, alteration or repair of any building or structure, or other work."   The record before the Court does not support a finding that Defendant Cox is engaged in such a construction business.  **The Court will therefore grant Defendant Cox's Motion for Summary Judgment with respect to Plaintiff's claim under NRS § 608.150.**

(*See* September 13, 2010 Order, at Exhibit C hereto (emphasis added).)

Plaintiff's Counsel then filed a Motion to Certify to the Nevada Supreme Court the question of who is an "original contractor making or taking any contract in this State for the erection, construction, alteration or repair of any building or structure, or other work" pursuant to N.R.S. § 608.150.  (*See* Mot. to Certify, at Exhibit D hereto.)  This Court denied the motion and effectively reaffirmed its prior ruling.  (*See* November 22, 2010 Order, at Exhibit E hereto).

Dissatisfied with this Court's prior two Orders on the N.R.S. § 608.150 issue, Plaintiff's Counsel forced the parties to brief the issue yet again by filing a frivolous Motion to Reargue on January 25, 2011.  (*See* Mot. to Reargue, at Exhibit F hereto.)  The Court denied the Motion to Reargue, as well, and said: "[t]he Court finds that Plaintiff has not presented a compelling reason why the Court should reconsider its prior Order, nor has Plaintiff presented new facts or law of a strongly convincing nature that would support reversing this Court's Order of September 13, 2010." (*See* June 20, 2011 Order, at Exhibit G hereto.)

On November 22, 2011, this Court issued an Order granting Valdez's Motion to Sever and Remand, ordering that "Plaintiff's second and third causes of action arising under Nevada state law are hereby SEVERED from the Amended Complaint (Doc. # 17) and REMANDED to the Eighth Judicial District in and for the County of Clark, State of Nevada in Case No. A-09-597433-C."  (*See* November 22, 2011 Order, at Exhibit H hereto.)  Importantly, Valdez's "second and third causes of action arising under Nevada state law" – the only claims remanded to Nevada state court – do not

include the long-since dismissed N.R.S. § 608.150 claim.[1]  This fact did not deter Plaintiff's Counsel from filing a "Motion to Reinstate Claims Against Defendant Cox Communications Under N.R.S. § 608.150" before the District Court for Clark County, Nevada on December 21, 2011.  (*See* "Mot. to Reinstate Claims Against Defendant Cox Communications Under N.R.S. § 608.150", at Exhibit I hereto.)   In his latest filing, Valdez contends that the state court should "reinstate" the N.R.S. § 608.150 claim against Cox because this Court's ruling was "erroneous as a matter of law" and "logically flawed".  (*See* Exhibit I, pp. 5-7.)  Thus, Cox will be forced, yet again, to expend time and resources in responding to Valdez's <u>fourth</u> attempt to save his N.R.S. § 608.150 claim.

### B.    The Phelps Lawsuit

After this Court granted summary judgment on Valdez's N.R.S. § 608.150 claim against Cox on September 13, 2010, Plaintiff's Counsel filed the instant lawsuit on February 2, 2011 on behalf of Michael Phelps, (and a purported 100-member class) seeking, again, to recover alleged unpaid wages from Cox pursuant to N.R.S. § 608.150.  [Dkt. # 1, Ex. A, Compl. ¶¶ 4-5, 21-25.]   On February 11, 2011, Phelps filed a lawsuit against MC Communications asserting claims under the FLSA, N.R.S. § 608.018 and N.R.S. § 608.040 [hereinafter, the "MC Lawsuit"].[2]  The exact claims were alleged in the Valdez Lawsuit.  The MC Lawsuit was removed to this Court on March 31, 2011.[3]  <u>Phelps avers that Cox is liable for all of these claims via his N.R.S. § 608.150 claim in this lawsuit.</u>  [Dkt. #1, Ex. A, ¶¶ 24, 25.]

Phelps was not employed by Cox.  Instead, Phelps was employed by MC Communications, which - <u>exactly</u> like the co-defendants in the Valdez Lawsuit - installs cable on a contract basis for Cox.  [Dkt. # 1, Ex. A, Compl. ¶¶ 13-16.]  <u>Exactly</u> like the Valdez Lawsuit, Phelps alleges in his

---

[1] Valdez's second and third causes of action arise under N.R.S. § 608.018 and N.R.S. § 608.040.  (*See* Exhibit B hereto, pp. 9-10.)

[2] A true and correct copy of the complaint filed in the MC Lawsuit is attached hereto as Exhibit J.

[3] The federal action is currently styled:  *Michael Phelps v. MC Communications, Inc. et al.*, 2:11-cv-00423-PMP–VCF, United States District Court for the District of Nevada. Plaintiff's state law claims arising under N.R.S. § 608.018 and N.R.S. § 608.040 were remanded on August 1, 2011.  That lawsuit is styled:  *Michael Phelps v. MC Communications, Inc. et al.*, Case No. A-11-634965-C, Eighth Judicial District Court in and for the County of Clark, State of Nevada.

Complaint that Cox is liable under N.R.S. § 608.150 for MC Communication's failure to pay all wages owed under the FLSA.  [Dkt. # 1, Ex. A, Compl. ¶¶ 22-23.]  Finally, <u>exactly</u> like the Valdez Lawsuit, Phelps contends that Cox is liable under N.R.S. § 608.150 because the installation of cable in the homes of Cox's customers purportedly amounts to the "alteration" of buildings.  [Dkt. # 1, Ex. A, Compl. ¶ 22.]  In other words, the Valdez Lawsuit and this case raise the <u>same</u> issue of law and arise from the exact <u>same</u> allegations of material fact against the <u>same</u> defendant by the <u>same</u> Plaintiff's Counsel.[4]

Knowing that this action and the Valdez Lawsuit involve identical claims, and that this Court had definitively ruled that N.R.S. § 608.150 does not apply to Cox, Cox filed its Petition for Removal on May 17, 2011 to secure an early and inexpensive resolution of this case.  [Dkt. # 1.]  Although this Court ultimately ruled that Cox did not meet the amount in controversy requirement for removal pursuant to 28 U.S.C. §§ 1332 and 1447, Cox respectfully submits that it should <u>not</u> have awarded to Phelps his attorneys' fees pursuant to 28 U.S.C. § 1447(c) because there is overwhelming evidence that Cox had a "objectively reasonable" basis for removal for the reasons that follow.

## III.   <u>ARGUMENT</u>

A.   <u>Standard for Motion For Reconsideration</u>

A court may relieve a party from a judgment or order pursuant to Fed. R. Civ. P. 60(b) if there has been:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by the opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

---

[4] Mr. Greenberg also filed the same lawsuit against Cox on behalf of Plaintiff Brian Izumi the same day that he filed this lawsuit on February 2, 2011.  In the Izumi Lawsuit, Plaintiff Izumi, like Plaintiff Phelps, contends that Cox is liable under N.R.S. § 608.150 for his alleged unpaid wages arising from his employment with Pride Communications, Inc.  A true and correct copy of the Complaint in the Izumi Lawsuit is attached hereto as Exhibit K, ¶¶ 24, 25.  At the same time that it removed this action, Cox also sought to remove the Izumi Lawsuit for the identical reasons it sought to remove this action. *See Izumi v. Cox Communications Las Vegas, Inc.*, No. 2:11-cv-00803-RLH-CWH, Dkt. # 24.  The Izumi Lawsuit was remanded to state court and no attorneys' fees were awarded.  *See Izumi v. Cox Communications Las Vegas, Inc.*, No. 2:11-cv-00803-RLH-CWH, 2011 WL 5854618, *2 (D. Nev. Nov. 21, 2011).

Fed. R. Civ. P. 60(b).  *See also Hines v. Neven*, No. 2:11–cv–01481–PMP–GWF, 2011 WL 6513512, *1 (D. Nev. Dec. 9, 2011).  A motion under Rule 60(b) must be made "within a reasonable time," but no later than one year following entry of the court's order.  Fed. R. Civ. P. 60(c).  Furthermore, a motion for reconsideration is "generally left to the discretion of the trial court," and the party seeking reconsideration "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Hines v. Neven*, No. 2:11–cv–01481–PMP–GWF, 2011 WL 6513512, *1 (D. Nev. Dec. 9, 2011).

> **B.**    Standard for Awarding Attorneys' Fees on a Motion to Remand

The United States Supreme Court held that "the standard for awarding fees should turn on the reasonableness of the removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Id.* at 141.  The Supreme Court further stated that "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.  For instance, a plaintiff's delay in seeking remand or <u>failure to disclose facts necessary to determine jurisdiction</u> may affect the decision to award attorney's fees."  *Id.* at 141 (emphasis added).  *See also Yazzie v. Celadon Trucking Services, Inc.,* No. CV-09-8198-PHX-GMS, 2010 WL 749639, *1 (D. Ariz. Mar. 3, 2010) (request for attorneys' fees denied where "[t]he Complaint did not seek a specific dollar amount of damages, but rather sought "[f]or judgment in [plaintiffs'] favor in amounts to be proved at trial, together with prejudgment interests and costs' and '[f]or such other and further relief that the court deems just and proper'").

The determination of whether the defendant had an objectively reasonable basis for removal is made <u>at the time of removal</u>.  *See Martin*, 546 U.S. at 141; *City of San Antonio v. Time Warner Cable, San Antonio, L.P.*, No. SA-09-CV-869-XR, 2009 WL 4878647, *4 (W.D. Tex. Dec. 11, 2009) ("[C]ourts look to the objective merits of the defendant's case at the time of removal.")  This is so because "diversity jurisdiction is determined at the time the action commences."  *Hill v. Blind*

*Indus. & Servs.*, 179 F.3d 754, 757 (9th Cir. 1999). *See also St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (stating that "[i]f the plaintiff could, no matter how bona fide his original claim in state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice.")

Furthermore, as the Ninth Circuit has recognized, "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorneys' fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.,* 518 F.3d 1062, 1065 (9th Cir. 2008) (holding that "[t]here is no question that Dollar Tree's arguments were losers" but that is not a basis for attorneys' fees.)

C.     Cox's Objectively Reasonable Bases For Removal

For all of the reasons set forth below, Cox's Petition for Removal was objectively reasonable.

1.     Cox's Reason for Removal Was to Expedite, Not to Delay, Final Resolution of this Case

Cox's motivation for removal – to bring this litigation to a swift conclusion with minimal expense – is relevant to the Court's decision to award attorneys' fees in granting Plaintiff's Counter-Motion to Remand Case to State Court Because of a Lack of Subject Matter Jurisdiction and for an Award of Attorney's Fees ("Motion to Remand").  In *Martin*, the United States Supreme Court discussed the congressional intent behind awarding attorneys' fees under the removal statute, 28 U.S.C. § 1447, and stated:

> Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.  The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general mater, when the statutory criteria are satisfied.

*Martin*, 546 U.S. at 140.  In *Yazzie v. Celadon Trucking Services, Inc.*, the plaintiff sought attorneys' fees associated with his motion to remand "because Defendants demonstrated bad faith when they offered no evidence in their Notice of Removal to establish that Plaintiffs' claims exceeded $75,000."  *Yazzie v. Celadon Trucking Services, Inc.*, No. CV-09-8198-PHX-GMS, 2010 WL

749639, *2 (D. Ariz. Mar. 3, 2010).  Declining to award fees, the Court said:

> While Defendants' Notice of Removal cite only "information and belief" as the basis for fixing the amount in controversy in excess of $75,000, **the lack of explicit evidence does not render their underlying belief objectively unreasonable**.  '[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorneys' fees would always be awarded whenever remand is granted.'  This is a wrongful death action, and it is not objectively unreasonable to believe that the Plaintiffs would be seeking more than $75,000 in damages for the death of their son.  **Awarding fees and costs under Section 1447(c) can serve to deter spurious removals, orchestrated to prolong litigation and impose costs on the opposing party**, but there is no evidence of improper motive, unreasonable bases for removal, or other 'unusual circumstances.'  Accordingly, the Plaintiffs' request for attorneys' fees and costs is denied.

*Id.* at *2 (emphasis added) (quoting *Lussier,* 518 F.3d at 1065).  While this is not a wrongful death case, the same rationale is applied here because there is no evidence of "improper motive" to prolong litigation based on the facts at the time of removal.  Based on its history of litigating with Phelps's counsel before this very Court, and this Court's prior ruling on the exact issue raised by Phelps's Complaint, Cox reasonably believed that this Court had the unique ability to expeditiously rule upon the dispositive issue of the applicability of N.R.S. § 608.150 to Cox.  Removal would expedite – not delay –the litigation with minimal cost to both parties.  As evidenced by the prompt filing of its Motion for Judgment on the Pleadings following removal, Cox sought to obtain an early ruling that, like the plaintiff in the Valdez Lawsuit, Phelps cannot maintain a claim against Cox under N.R.S. § 608.150 because the statute does not apply to Cox.  [*See* Dkt. # 14; Ex. C hereto, p. 2.]  Magistrate Judge Hoffman found in the Izumi Lawsuit (which was removed at the same time and involved the exact same claim – N.R.S. § 608.150) that Cox's Motion For Judgment on the Pleadings had "merit" and granted the parties' Motion to Stay Discovery pending a ruling on Plaintiff's Motion to Remand.[5]  Accordingly, there is no evidence of delay to warrant an award of attorneys' fees.

---

[5] *See Izumi v. Cox Communications Las Vegas, Inc.*, No. 2:11-cv-00803-RLH-CWH, August 31, 2011 Order [Dkt. # 31].

1
2          2.   Cox's Efforts to Establish the Amount in Controversy Were Objectively
3               Reasonable at the Time of Removal

4               a.   Removal is objectively reasonable if the complaint is silent or unclear
5                    as to the amount in controversy

6          Whether removal is objectively reasonable is determined at the time of removal.  *City of San*
7  *Antonio v. Time Warner Cable, San Antonio, L.P.*, No. SA-09-CV-869-XR, 2009 WL 4878647, *4
8  (W.D. Tex. Dec. 11, 2009) ("[C]ourts look to the objective merits of the defendant's case at the time
9  of removal.")  Where a plaintiff does not specify a specific dollar amount of damages or the amount
10 in controversy is unclear in his complaint, at least three district courts within the Ninth Circuit have
11 deemed removal to be objectively reasonable.  In *Jellinek v. Advance Products & Systems, Inc*., the
12 court refused to award attorneys' fees, in part, because the plaintiff failed to allege the amount in
13 controversy in the original and amended complaints.  No. 10-cv-1226 JM (WMC), 2010 WL
14 3385998, *3 (S.D. Cal. Aug. 24, 2010).  The court said:

15         Here, the court denies the motion for award of costs and fees because two of the
16         issues central to the case are unclear.  The first ambiguity was the result of the Ninth
           Circuit's split in authority on when the 30-day period for filing a notice of removal
17         begins tolling.  APS and Forlander should not be held responsible for a split in Ninth
           Circuit authority.  **The second ambiguity was caused by Plaintiff's failure to allege
18         an amount in controversy in the initial and amended complaints, and given this
           lack of clarity it cannot be said that defendants lacked an objectively reasonable
19         basis for seeking removal.**

20 *Id.* at *3 (emphasis added). Similarly, in *Yazzie v. Celadon Trucking Services, Inc.,* the court
21 declined to award attorneys' fees where the court found that:

22         The Complaint did not seek a specific dollar amount of damages, but rather sought
23         '[f]or judgment in [plaintiffs'] favor in amounts to be proved at trial, together with
           prejudgment interests and costs' and '[f]or such other and further relief that the court
24         deems just and proper'.

25 No. CV-09-8198-PHX-GMS, 2010 WL 749639, *1 (D. Ariz. Mar. 3, 2010). *See also Chanouzas v.*
26 *U.S. Bank National Association*, No. CV 09-469 PK, 2009 WL 3734101, *4 (D. Or. Nov. 3, 2009)
27 ("The defendants, however, did not lack an objectively reasonable basis for seeking removal because
28 the complaint was unclear regarding the total amount in controversy [where it sought $65,000, and it

was unclear as to whether punitive damages and attorneys' fees were included in this amount or if they were included in the waiver]. The court should therefore deny plaintiffs' request for attorney fees.").

Phelps admits in his Motion to Remand that "[t]he amount of such unpaid wages is not specified in the complaint." [Dkt. # 17, Mot. to Remand, p. 2.] Here, Phelps's Complaint only alleged that, "[a]s a result of the foregoing, the named plaintiff seeks a judgment against the defendant Cox for all unpaid wages owed to him and the members of the putative class of plaintiffs by MC as alleged in this claim for relief, along with interest, costs and attorney's fees." [Dkt. # 1, Ex. A, Compl. ¶ 25; Dkt. # 17, Mot. to Remand, p. 3.] Thus, Cox had a reasonably objective basis for removal based on Phelps's Complaint alone because it did not seek a specific dollar amount of damages and was unclear regarding the total amount in controversy.[6]

        **b.**   <u>The $6,000 to $9,000 post-removal damages claim cannot be considered in determining whether Cox had a reasonable basis for removal</u>

Whether removal is objectively reasonable for purposes of an award of attorneys' fees is assessed at the time of removal and post-removal events are not considered in this analysis. *Fernandez v. Pilot Travel Centers, LLC*, No. 5:07-cv-359-Oc-10GRJ, 2007 WL 3379848, *3 (N.D. Fla. Nov. 14, 2007) ("Post removal events normally are not relevant to determining the amount in controversy and would be even less relevant to the determination of whether at the time of removal the Defendant had an objectively reasonable basis for removing the action."); *City of San Antonio v. Time Warner Cable, San Antonio, L.P.*, No. SA-09-CV-869-XR, 2009 WL 4878647, *4 (W.D. Tex. Dec. 11, 2009) (emphasis added) ("courts look to the objective merits of the defendant's case <u>at the time of removal</u>.")

Here, Phelps's assertion that his damages would be $6,000 to $9,000 dollars should not have

---

[6] *Compare Jeld-Wen, Inc. v. CDK Distribution, Inc.*, No. 07-C-342-S, 2007 WL 5674489, *3 (W.D. Wis. Oct. 2, 2007) (court awarded attorneys' fees where complaint on its face pled a damages number that was below the required $75,000 amount in controversy) and *Czarnecki v. Hawthorn Manufacturing Corp.*, No. 08-5558, 2009 WL 159806, *3-4 (E.D. Pa. Jan. 16, 2009) (court awarded attorneys' fees where complaint specifically sought $3,278.40 in actual damages on wage and hour claim; sought liquidated damages in an amount equal to 25% of the total amount of wages or $500 whichever is greater).

been considered in determining whether Cox had an objectively reasonable basis for removal because that statement was made for the first time post-removal. In its Order, the Court found that Cox's position constitutes an objectively unreasonable basis for removal and that "Defendant has failed to present evidence that Plaintiff's individual attorney's fees on a $9,000 claim would exceed $66,000, thereby satisfying the $75,000 requirement."[7]   [Dkt. # 35, Dec. 22, 2011 Order, p. 9.]   The Court analogized the instant case to *Rae v. Perry* stating "that the defendant [in *Rae*] lacked an objectively reasonable basis for removal when the complaint sought only $20,000 in damages and the defendant failed to offer evidence that showed by a preponderance of the evidence that the amount in controversy exceeded $75,000. 392 F. App'x 753, 756 (11th Cir. 2010)."[8]   [Dkt. # 35, Dec. 22, 2011 Order, p. 8.]   However, Cox was not aware that Phelps was seeking "$6,000 to $9,000" at the time it made the decision to remove this case.   Unlike *Rae,* where the amount in controversy was set forth in the complaint, Phelps's Complaint was silent as to the amount in controversy and Cox had no knowledge of Phelps's specific claim of $6,000 to $9,000 in damages at the time of removal. *See Rae v. Perry*, 392 F. App'x 753, 756 (11th Cir. 2010) ("the complaint and supporting documentation filed with the notice of removal indicate that *Rae* sought $20,000 in compensatory damages on all counts together"); *Rae v. Perry*, No. 8:09-cv-1549-T-30EAJ, 2009 WL 3430023, *2 (M.D. Fla. Oct. 21, 2009) ("In the complaint, Plaintiff seeks compensatory damages in excess of $20,000…."); Dkt. # 1, Ex. A, ¶ 25.   Unlike *Rae*, the first time Phelps advised Cox of his

---

[7] The Court's Order at page 6, footnote 2 states that the "Court does not consider Phelps's post-removal stipulation to limit his individual recovery to $75,000 because facts are determined at the time of removal and generally post-removal acts do not oust the court of jurisdiction." This same analysis should be applied to whether removal is objectively reasonable for purposes of an award of attorneys' fees.

[8] For purposes of determining whether Cox met the amount in controversy requirement by a preponderance of the evidence for removal only (and not attorneys' fees) the Court distinguished *Rile, Rivera,* and *Simmons,* the cases relied upon by Cox. *Rile v. STRS Ohio CA Real Estate Investment 1, LLC*, No. 09-05634, 2010 WL 1838965, *3 (N.D. Cal. May 3, 2010); *Rivera v. Costco Wholesale Corp.*, No. C 08-02202CW, 2008 WL 2740399, *5 (N.D. Cal. July 11, 2008); *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002). The Court said: "In those three cases, the actual damages were significantly higher than Phelps's $6,000 to 9,000 in unpaid wages (Rile – $11,000 in rent, plus relocation costs and medical expenses; Rivera - $52,000; Simmons - $51,200)." [Dkt. # 35, Dec. 22, 2011 Order, p. 7.) However, unlike these three cases where the amount of damages or some portions thereof was known at the time of removal, Cox did not know that Phelps had at most a $9,000 wage claim at the time of removal. [*See* Dkt. # 1, Ex. A, Compl.]

specific amount of damages (*i.e.*, $6,000 to $9,000) was after Cox filed its Petition for Removal. [Dkt. # 17, Mot. to Remand, pp. 2, 3.]  Therefore, it is fundamentally unfair to find that Cox had an unreasonable basis for removal based on facts that were learned by Cox post removal (*i.e.*, the $6,000 to $9,000 claim).  For this reason, the award of attorneys' fees should not be based on Phelps's post removal damages claim.

c.   <u>The Valdez Lawsuit provided an objectively reasonable basis for determining the amount in controversy at the time of removal where the Complaint was silent and the $6,000 to $9,000 post-removal damages claim was unknown to Cox</u>

*i.   The Valdez settlement offer*

Notwithstanding that the silence of Phelps's Complaint as to the amount in controversy demonstrates that Cox had an objectively reasonable basis for removal **at the time it filed its Petition for Removal on May 17, 2011** sufficient to warrant the Court's denial of attorneys' fees, Cox had an additional objectively reasonable basis for its removal – its experience with the Valdez Lawsuit.

<u>The Valdez Lawsuit is highly instructive for purposes of amount in controversy because the claims and damages for which Phelps seeks to hold Cox liable in this lawsuit are exactly the same as the claims and damages sought in the Valdez Lawsuit.</u>  In this regard, Phelps's single claim in this lawsuit under N.R.S. § 608.150 seeks to hold Cox liable for the indebtedness of its contractor, MC Communications.  [Dkt. # 1, Ex. A, Compl. pp. 5-6.]  According to Phelps's Motion to Remand, Cox's alleged liability for MC Communications' "indebtedness" would include the claims and damages sought by Phelps in the MC Lawsuit.  [*See* Dkt. # 17, Mot. to Remand, p. 12.]  The claims and damages in the MC Lawsuit include alleged: unpaid minimum wages, unpaid overtime, liquidated damages, attorney's fees, costs and interest.  [*See* Ex. J hereto ¶ 25.]

Indeed, the Valdez Complaint and the Phelps Complaint against MC Communications are the same.  In the Valdez Lawsuit, Valdez asserts a claim under the <u>FLSA</u> for which he seeks:

> a judgment for unpaid overtime wages and/or unpaid minimum wages, and additional liquidated damages of 100% of any unpaid minimum wages and/or overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to the named plaintiff and any such other persons who consent to join this action, and … an award of attorney's fees, interest and costs as provided for

14

by the FLSA.

(*See* Ex. B hereto, ¶ 27.)  Just like the Valdez Complaint, the Complaint filed by Phelps in the MC

Lawsuit asserts a claim under the <u>FLSA</u> for which he seeks:

> a judgment against all defendants for unpaid overtime wages and/or unpaid minimum wages, and additional liquidated damages of 100% of any unpaid minimum wages and/or overtime wages, such sums to be determined based upon an accounting of the hours worked by, and the wages actually paid to the named plaintiff and any such other persons who consent to join this action, and … an award of attorney's fees, interest and costs as provided for by the FLSA.

(*See* Ex. J hereto, ¶ 25.)  Valdez asserts a claim under N.R.S. § 608.018 for which he seeks:

> a judgment against defendants for overtime wages, such sums to be determined based upon an accounting of the hours worked by, and the wages actually paid to, the plaintiff, and … an award of attorney's fees, interest and costs, as provided for by Nevada law.

(*See* Ex. B hereto, ¶ 30.)    Phelps asserts a claim under N.R.S. § 608.018 against MC

Communications for which he seeks:

> a judgment against the corporate defendant for overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, the plaintiff, and … an award of attorney's fees, interest and costs, as provided for by Nevada law.

(*See* Ex. J hereto, ¶ 28.)  Valdez asserts a claim under N.R.S. § 608.040 for which he seeks:

> a judgment against the defendants … for the penalty prescribed by Nevada Revised Statutes § 608.040, to wit, for a sum equal to up to thirty days wages, along with interest, costs and attorney's fees, on behalf of himself and the members of the putative plaintiff class.

(*See* Ex. B hereto, ¶ 36.)  Phelps asserts a claim under N.R.S. § 608.040 for which he seeks:

> a judgment against the corporate [sic] for the wages owed to them as prescribed by Nevada Revised Statutes § 608.040, to wit, for a sum equal to up to thirty days wages, along with interest, costs and attorney's fees, on behalf of himself and the members of the putative plaintiff class.

(*See* Ex. J hereto, ¶ 32.)  Finally, the N.R.S. § 608.150 claim asserted by Phelps and Valdez is the

same.  Valdez contends in his complaint:

> Pursuant to Nevada Revised Statutes § 608.150 the defendant, COX, was acting as a general, or superior contractor, for the plaintiff's installation or construction services by engaging the defendants VIP, QUALITY, SIERRA AND PARADIGM as subcontractors to perform such installation or construction services and is liable to the plaintiff and the members of the putative class for all unpaid wages owed to them for performing such services.

(*See* Ex. B hereto, ¶ 40.)  In the instant action, Phelps contends that:

> Pursuant to Nevada Revised Statutes § 608.150 the defendant, Cox, was acting as an "original" contractor of the services provided by the plaintiff and the putative class members that are alleged in paragraph 22 by engaging MC as its subcontractor or other contractor to perform such services and is liable to the plaintiff and the members of the putative class for all unpaid wages owed to them for performing such services.

[Dkt. # 1, Ex. A, ¶ 24.]   Although the Court said in its Order that the Valdez Lawsuit is not analogous because it involved four claims while the Phelps litigation involved one single claim, Cox is liable for the exact same four claims as it was in the Valdez Lawsuit due to the two-tiered nature of the N.R.S. § 608.150 claim.  [*See* Dkt. # 35, Dec. 22, 2011 Order, p. 7.]  Phelps confirmed this when he said "[t]he merits of [Plaintiff's] individual claim against [Cox] should not be determined until such litigation against MC is resolved."  [Dkt. # 17, Mot. to Remand, p. 12.]  Therefore, given that identical claims and damages are alleged in both the Valdez Lawsuit and the MC Lawsuit, Cox reasonably relied upon its experience in the Valdez Lawsuit in asserting that the amount in controversy in this action would exceed $75,000 for Phelps individually.

Significantly, Valdez sought well in excess of $75,000 for his individual damages just against Cox.  Approximately one year after the Valdez Complaint was filed, on August 24, 2010, Mr. Greenberg sent a settlement proposal in the amount of $300,000 to Cox on behalf of Valdez, individually, and explicitly stated:

> I am, at the request of plaintiff Joe Valdez, communicating the following settlement proposal:
>
> A payment to Joe Valdez, individually, of $300,000 from each defendant, in exchange for a settlement of all claims that he, personally, possesses against the defendants.
>
> The foregoing settlement proposal is made on behalf of Joe Valdez as an individual and is not presented as a proposal for the settlement of the putative class claims or FLSA collective action claims or the claims of any other persons made in this litigation.

(*See* Declaration of Annette A. Idalski ["Idalski Dec."], attached as Exhibit L, at ¶ 4 and Ex. 1 thereto.)[9]  **The offer of settlement of $300,000 is more than three times the required amount in**

---

[9]The same settlement proposal of $300,000 was made to each of the other three subcontractor defendants of Cox.  (*See id.*)  In total, from all four defendants, Valdez sought $1.2 million dollars.  (*See id.*)

**controversy ($75,000) and does not breakdown damages and attorneys' fees.**

Valdez's settlement demand provides critical evidence and a reasonable basis for removal given that the same claims are at issue <u>and</u> based on Cox's research regarding Valdez and Phelps's earnings. Phelps is seeking to recover for a longer period of time than Valdez. In this regard, Phelps's Complaint against MC Communications was filed on or around February 11, 2011, and Phelps's employment with MC Communications terminated in June 2009. (*See* Ex. J hereto; Dkt. # 1, Ex. C, ¶ 3.) Phelps alleges willful violations of the FLSA, thus allowing for a three year statute of limitations, and equaling approximately eighteen (18) months for which Phelps seeks damages against MC Communications (from February 11, 2008 through June 2009). (*See* Ex. J hereto, ¶¶ 22, 24.) In the Valdez Lawsuit, Valdez was employed by Quality for approximately 17 months (from January 25, 2006 through March 31, 2007 and again from October 2008 through January 5, 2009). (*See* Deposition of Joseph Valdez ["Valdez Dep."] 327:22-328:5; 336:1-7.)[10] Based on a three year statute of limitations and the date Valdez filed his complaint (August 18, 2009), Valdez could seek, at most, ten and a half months of alleged unpaid wages from Quality. (*See* Exs. A and B hereto.) Valdez was employed as an installer by Sierra for only five months (from January 4, 2007 until February 2007, and November 2007 through February 4, 2008), and was employed by VIP for only six months (from February 2009 through July 2009). (Valdez Dep. 146:19-147:5; 348:22-349:5; 367:11-16; 368:8-18; 370:8-371:2).

Moreover, Valdez and Phelps's average weekly wages were comparable. For example, Valdez earned an average of approximately $607 per week while working for Quality from October 31, 2008 through January 2009, according to Valdez's pay stubs attached to the Affidavit of Brady Wells, Quality's Vice President.[11] Cox researched Phelps's wages by contacting John Wehrman, Chief Financial Officer of MC Communications. Mr. Wehrman testified that Phelps earned wages amounting to $474.05 per week on average although this amount fluctuated. [Dkt. # 1, Ex. C, ¶ 4.]

---

[10] Excerpts from the Deposition of Joseph Valdez are attached hereto as Exhibit M.

[11] A true and accurate copy of the Declaration of Brady Wells, with Valdez's paystubs attached as exhibits, is attached hereto as Exhibit N.

Given the same claims, similar weekly earnings and that Phelps is seeking to recover for a longer time period than Valdez, Cox had a reasonable basis to believe that the amount in controversy requirement would be met in this case based on Valdez's $300,000 individual settlement demand. Because Valdez failed to break down this $300,000 offer into damages and attorneys' fees, it is not possible for Cox to do so. For removal, Cox need not establish the exact amount in controversy, but instead must show that the amount in controversy will, more likely than not, exceed $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). The same must be true as to whether the removal was objectively reasonable.

"A settlement offer is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002); *Krajca v. Southland Corp.*, 206 F. Supp. 2d 1079, 1081-82 (D. Nev. 2002) (Pro, J.) (citing *Cohn* and holding that amount in controversy requirement was met where settlement letter indicated that more than $75,000 in damages were at issue and where discovery responses revealed that the plaintiffs' damages were well in excess of $75,000); *Arellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1108 (S.D. Cal. 2003) (stating that "Home Depot relies exclusively upon [the plaintiff's] demand letter to establish the amount in controversy" and holding that amount in controversy was met where demand letter sought "either $70,000 and immediate reinstatement, or $95,000 and the 'cleansing' of [the plaintiff's] personnel file"); *Rile v. STRS Ohio CA Real Estate Investment 1, LLC*, No. 09-05634, 2010 WL 1838965, *2 (N.D. Cal. May 3, 2010) (pre-removal settlement demand of $75,000 established amount in controversy where the plaintiff's complaint did not specify particular amount of damages sought). If this evidence is relevant to amount in controversy requirements for removal purposes, it should certainly be sufficient to meet the "objectively reasonable basis" standard regarding attorneys' fees awards. While this $300,000 settlement offer was made on behalf of Valdez, a non-plaintiff, it is objectively reasonable to conclude that the amount in controversy could be met due to the similarity between Valdez and Phelps's claims and work history.

Indeed, comparisons of <u>fee awards and jury verdicts in similar cases can be the basis for</u>

establishing the amount in controversy.    In *Flores v. Standard Ins. Co.*, the defendant argued that the amount in controversy was established based, in part, on the punitive damages the plaintiff may recover.  No. 3:09-cv-00501-LRH-RAM, 2010 WL 185949, *5-6 (D. Nev. Jan. 15, 2010).  Noting that the "exact amount [of punitive damages] sought is unclear," the court stated that "[t]o establish the likely amount of punitive damages, the defendant may introduce evidence of jury verdicts in cases involving similar facts."  *Id.* at *5.    Based on the defendant's identification of punitive damages awards in similar cases, the court upheld removal.  *Id.* at *6 ("Although the facts of the cited cases are not identical to the facts now before the court, the jury verdicts in these cases amply demonstrate the potential for large punitive damages awards in bad faith insurance cases.").  *See also Rivera*, 2010 WL 2740399 at *4 (holding that the defendant established that the plaintiff's alleged emotional distress and punitive damages could be substantial by introducing evidence of verdicts in similar cases).    Likewise, in *Simmons v. PCR Technology*, the Court relied on experience with like claims to determine that the amount in controversy requirement was met.  209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002).    Although the court did not reach an exact dollar figure in upholding removal, it stated that based on its experience, "attorneys' fees in individual discrimination cases often exceed the damages".  *Id.* at 1035.  *See also Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (holding that the defendant established that the plaintiff's attorney's fees would meet the amount in controversy requirement by presenting evidence of the hourly rate of the plaintiff's counsel as well as evidence of fee awards in similar cases).  For all of these reasons, Cox had an objectively reasonable basis for removal based on the Valdez Lawsuit.

          ii.    *A likelihood of substantial attorneys' fees based on the Valdez Lawsuit and others*

      In calculating the amount in controversy for purposes of removal, Cox drew upon its experience with Mr. Greenberg, and determined that the attorneys' fees would be substantial.  In the Valdez Lawsuit, Valdez's attorneys' fees were in the six figure range.  (*See* July 28, 2011 Declaration of Annette Idalski ¶ 5, a true and correct copy of which is attached hereto as Exhibit O.)  Similarly, in *David Dent, et al. v. MC Communications, et al.*, Civil Action No. cv-S-04-1197-RCJ-

RJJ, United States District Court for the District of Nevada, a lawsuit filed for unpaid wages after Dent had already waived those claims through his settlement via the U.S. Department of Labor, the attorneys' fees alleged to have been incurred with respect to Dent individually based on the Settlement filed with the Court were $43,000 even though defendants' motion to dismiss the action as to the federal claims was granted.[12]   Additionally, based on Cox's research of Plaintiff's Counsel's attorneys' fees in similar wage cases, Mr. Greenberg and his co-counsel obtained court-approved attorneys' fees of almost a million dollars - *e.g.*, $923,761.  *See* August 25, 2008 Order in *Westerfield v. Wyndham Vacation Resorts, Inc.*, Civil Action No. cv-S-05-1264-JCM-PAL, United States District Court for the District of Nevada, attached as Exhibit "E" to Cox's Petition for Removal.

Attorneys' fees would surely be substantial in this case given Cox's recent experience with this same claim and Mr. Greenberg in the Valdez Lawsuit.  There, the N.R.S. § 608.150 claim failed as a matter of law and Mr. Greenberg filed numerous motions seeking to overturn the ruling requiring the briefing of at least four separate motions, including but not limited to, a motion to reargue, a motion to remand, a motion to certify the issue to the Nevada Supreme Court and, most recently as of December 22, 2011, a motion to reinstate the already adjudicated claim in Nevada state court.  (*See* Exs. D, F, and I hereto.)  Because this claim has no merit based on the Valdez Lawsuit, Phelps, like Valdez, will likely be the only plaintiff.

Given these litigation realities and the unique circumstances present here, it is hard to imagine how Cox's reliance on its experience cannot be an objectively reasonable basis for removal. Phelps argued and the Court found that Cox could not meet the amount in controversy, in part, because attorneys' fees would need to be apportioned among Phelps and the putative class members. While this may warrant a remand given the preponderance of the evidence standard, Cox submits that this fact does not warrant an attorneys' fees award.  As the Ninth Circuit recognized in *Lussier v. Dollar Tree Stores, Inc.*, "removal is not objectively unreasonable solely because the removing

---

[12] A true and correct copy of the Dent Complaint is attached hereto as Exhibit P.  A copy of the Settlement Agreement was filed with the Court in the case styled *David Dent, et al. v. MC Communications, et al.*, Civil Action No. cv-S-04-1197-RCJ-RJJ, United States District Court for the District of Nevada, at Dkt. # 59.

party's arguments lack merit, or else attorneys' fees would always be awarded whenever remand is granted." 518 F.3d 1062, 1065 (9th Cir. 2008).  "Although no bright line rule emerges, courts that have applied the *Martin* standard seem to focus upon whether the removing party has offered a credible reason for the removal, even if it turns out by subsequent events that the removing party was wrong on the facts or was wrong on the law."  *See Fernandez v. Pilot Travel Centers, LLC*, No. 5:07-cv-359-Oc-10GRJ, 2007 WL 3379848, *2 (M.D. Fla. Nov. 14, 2007)

In the same vein, courts have refused to award attorneys' fees based on incorrect calculations regarding the amount in controversy.  In *City of San Antonio v. Time Warner Cable*, the defendant removed a mandamus action in which no monetary demand was made and even though the defendant was incorrect in calculating the amount in controversy, attorneys' fees were not awarded. No. SA-09-CV-869-XR, 2009 WL 4878647, *2 (W.D. Tex. Dec. 11, 2009).  The defendant argued that, because the City sought to conduct an audit of the defendant's financial records, "the consequences that may result from the litigation exceed the minimal jurisdictional requirement."  *Id.* In support of its removal, the defendant "included a copy of a Payment Summary Sheet that details the franchise fees paid to the City from 2006 through 2008," and that "[e]ach franchise payment alone is in excess of $75,000."  *Id.*  The court rejected the defendant's argument, stating that "[w]hile it is undisputed that TWC has paid millions to the City, those amounts are not the subject of this controversy.  The City is not challenging the validity of those payments nor is it seeking unpaid taxes or fees.  The City merely seeks an audit of financial records in accordance with state law."  *Id.* Although the court found removal to be improper, it refused to award the plaintiff its attorneys' fees associated with remand, stating that "this Court can see how the Defendants had objectively reasonable grounds to believe that removal was legally proper based on the amount in controversy". *Id.* at *4.

Likewise, in *Gregory v. Fidelity Nat. Title Ins. Co.*, the defendant alleged that the amount in controversy would exceed $75,000 because the plaintiff was seeking attorneys' fees related to two separate lawsuits.  No. 10-cv-02722-RED-MEH, 2011 WL 3608444, *2-3 (D. Colo. Aug. 16, 2011). The court found that state law authorized recovery of attorneys' fees in only one action and did not

permit the plaintiff to recover attorneys' fees in the case at bar. *Id.* at *2. As a result, the court stated that the defendant's "calculation improperly considers the plaintiffs' attorney fees in this case as part of the amount in controversy" and ordered the case remanded. *Id.* Notwithstanding the defendant's improper inclusion of attorneys' fees in calculating the amount in controversy, the court declined to award attorneys' fees related to the remand, and stated that "even though the defendant ultimately did not satisfy its burden to demonstrate the amount in controversy, I conclude that the defendant had an objectively reasonable basis on which to seek removal." *Id.* at *3.

Unlike the defendants in *Yazzie v. Celadon Trucking Services, Inc.*, who simply removed based on "information and belief" and submitted no evidence prior to removing the action, Cox had an identical case from which to measure the amount in controversy based on a settlement demand, had conducted an investigation of Phelps's alleged damages and had direct experience with attorneys' fees and damages settlements of Mr. Greenberg. *See Yazzie v. Celadon Trucking Services, Inc.*, No. CV-09-8198-PHX-GMS, 2010 WL 749639, *2 (D. Ariz. Mar. 3, 2010). For all of these reasons, Cox had an objectively reasonable basis for removal, and, therefore, the attorneys' fee award against Cox should be reversed.

### 3.   Cox Did Not Misrepresent *Gibson*

Contrary to Phelps's accusations in his Reply brief in support of his Motion to Remand, Cox did not "misrepresent" the *Gibson* case when it said: "attorneys' fees related to the class claims asserted in Plaintiff's Complaint are properly included in calculating the amount in controversy." [Dkt. # 26, p. 12.] Cox submits that this sentence was taken out of context. A review of Cox's Petition for Removal, Phelps's Motion to Remand, Cox's Response to Phelps's Motion to Remand, and Phelps's Reply in Support of his Motion to Remand illustrates this point. The parties' argument focused solely on whether attorneys' fees could be included in the first place based on a relevant statute.

***Cox's Argument - Petition For Removal***. Phelps sought attorneys' fees in the Complaint. [Dkt. # 1, Ex. A, Compl., ¶ 25.] Not only does Phelps seek attorneys' fees in this action, but he contends that Cox is liable for attorneys' fees in the underlying federal court action because Cox is

allegedly liable for the indebtedness of its subcontractors pursuant to N.R.S. § 608.150.  *See* N.R.S. § 608.150; Dkt. # 1, Ex. A, ¶¶ 24-25; Exhibit J hereto, MC Complaint, ¶ 25.   In its removal papers, Cox argued that the attorneys' fees pled by Phelps in his Complaint should be included in the amount in controversy.  [Dkt. # 1, ¶¶ 13-14.]

***Phelps's Argument - Motion to Remand***.  In his Motion to Remand, Phelps vehemently and incorrectly argued that attorney's fees could not be included in the amount in controversy calculation at all even though he sought attorneys' fees in his Complaint.  Phelps said:

> **2.  Because the Plaintiff Does Not Sue Under a Statute Providing For an Award of Attorneys' Fees a Potential Attorney's Fee Award is Not Part of the Amount in Controversy**
>
> …Defendant ignores that ***there is no statutory claim for attorney's fees in this case!*** The "underlying statute" in this case and the sole basis upon which plaintiff brings suit is N.R.S. § 608.150.  That statute does not provide for an award of attorney's fees.  A generalized demand in a complaint for attorney's fees, not based upon any express grant of such fees as a matter of statute or contract, is not part of the amount in controversy.  *See, Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, n.4 (11th Cir. 2003) and cases cited therein.  Accordingly, there is no potential attorney's fee award to the plaintiff that can be considered in determining whether the amount in controversy requirement is met.

[Dkt. # 17, Mot. to Remand, pp. 3-4 (emphasis in original).]  Phelps further argued:

> **3.  The Potential Award of Attorney's Fees From A Class Action Recovery is Not Part of the Amount in Controversy for Jurisdictional Purposes**
>
> Defendant asserts that plaintiff's proposed class action under NRCP Rule 23 presents attorney's fee claims that would meet the amount in controversy requirements.  That assertion is indisputably false as a matter of law.  Potential attorney's fee awards in class actions are not considered in determining whether the amount in controversy requirements are met.  *See, Zahn v. International Paper Co*., 414 U.S. 291 (1973) *Goldberg v. CPC International*, 678 F.2d 1365 (9th Cir. 1982) and *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001).  Although not applicable, as no such fee award is possible, statutory attorney's fee awards, when made in a class case, are also not properly included in the amount in controversy.  *See, also, Gibson v. Chrysler Corp*., 261 F.3d 927, 942-43 (9th Cir. 2001) (Reexamining *Goldberg* and reaffirming that class awards of statutory attorney's fees cannot be attributed to the individual bringing the class case for amount in controversy purposes).

[Dkt. # 17, Mot. to Remand, p. 4.]   Both of the points Phelps makes in Sections 2 and 3 of his Motion to Remand are **incorrect**.  Indeed, Phelps alleges that Cox is liable for attorneys' fees under

the FLSA in the underlying litigation.  Additionally, given Phelps's admission in his Motion to Remand that his damages amounted to no more than $9,000, Phelps could also recover under Nevada Revised Statutes § 18.010.[13]

***Cox's Argument - Opposition to Phelps's Motion to Remand***.  In its Response to Phelps's Motion to Remand where Phelps clearly misinterprets the law regarding attorneys' fees in this case, Cox sought to correct Phelps's baseless arguments.  Cox said in pertinent part:

> To the contrary, the attorneys' fees related to the class claims asserted in Plaintiff's Complaint are properly included in calculating the amount in controversy.  *Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001).  Plaintiff has taken the untenable position, both in his Motion to Remand and in his counsel's letters (Exs. 3, 5, 7 hereto), that "[p]otential attorney's fees awards in class actions are not considered in determining whether the amount in controversy requirements are met."  [Dkt. #16, p. 4].  That is not the law and none of the cases Plaintiff cites supports such a blatant misrepresentation.  *Zahn v. Int'l Paper Co.* held that each plaintiff in a class action "must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case."  414 U.S. 291, 301 (1973).

[Dkt. # 26, pp. 12-13.]  Therefore, when read in context, Cox was merely pointing out that attorneys' fees are properly included in calculating the amount in controversy and that Phelps's statement that attorneys' fees must be totally excluded in class actions is wrong.  Cox cited to the cases Plaintiff relied upon – including *Gibson* – to generally show that attorneys' fees were included in the amount in controversy.

***Phelps's Argument – Reply to Motion to Remand***.  In his Reply, Phelps again misstates the law concluding that attorneys' fees under N.R.S. § 18.010 (2)(a) are not recoverable in class actions:

> The only basis that defendant proffers for a statutory award of attorney's fees in this case is N.R.S. § 18.010(2)(a).  As discussed, *infra*, such claim is disingenuous and absurd as the Nevada Supreme Court has expressly held that attorney's fees cannot be awarded under N.R.S. § 18.010 (2)(a) in class actions.  *See, Schouweiler v. Yancey*

---

[13] This Court agreed with Cox, not Phelps, and stated in its Order:

> Nevada Revised Statutes § 18.010 authorizes the court to award attorney's fees to a prevailing plaintiff that recovers no more than $20,000.  Furthermore, pursuant to § 18.010, attorney's fees can be recovered in class actions when recovery does not exceed $20,000.  See Izumi, 2011 WL 5854618, at *2, n.1.  Here, Plaintiff seeks $6,000 to $9,000, in damages; therefore, if Plaintiff ultimately prevails and recovers $20,000 or less, the Court may award attorneys' fees under § 18.010.

[Dkt. # 35, Dec. 22, 2011 Order, p. 5.]

1   *Co.*, 712 P.2d 786, 788 (Nev. Sup. Ct. 1985).

2   [Dkt. # 29, Reply to Mot. to Remand, p. 4.]  Then, Phelps wholly misconstrued Cox's simple

3   assertion that statutory attorneys' fees <u>can</u> be used to calculate the amount in controversy claiming

4   that Cox failed to recognize apportionment.  Phelps accused Cox of "making a blatant

5   misrepresentation of the law".  [Dkt. # 29, Reply to Mot. to Remand, p. 2.] Phelps  said: "Defendant

6   in this case, exactly like defendant Chrysler in *Gibson*, advances the "sole argument" that a class

7   award of attorney's fees must be attributed to plaintiff Phelps individually for amount in controversy

8   purposes.  Such argument is not only incorrect, it is abusive, frivolous and made in bad faith in light

9   of the clear holdings in *Gibson* and *Kanter*."  [Dkt. # 29, Reply to Mot. to Remand, p. 6.]  However,

10  this is the perfect example of the "pot calling the kettle black."  Phelps incorrectly argued that

11  attorneys' fees <u>cannot</u> be included in the amount in controversy <u>at all,</u> whether by apportionment or

12  otherwise, even though he sought attorneys' fees in his Complaint and sought to hold Cox liable for

13  the attorneys' fees under the FLSA in the MC Lawsuit.  [Dkt. # 17, Mot. to Remand, pp. 3-4.]  Then,

14  when Cox argues in response that attorneys' fees <u>can</u> be included, Phelps accuses Cox of

15  misrepresenting the law by twisting its statement to a reference to apportionment that does not exist.

16  [Dkt. # 29, Reply to Mot. to Remand, pp. 2-6.]  Cox only intended to refute Phelps's argument that

17  attorneys' fees could not be used to calculate the amount in controversy – nothing more; nothing

18  less.  Cox did not state whether all or a portion of the attorneys' fees should be considered because

19  this was not the point Cox was making.  Cox's point was simply that attorneys' fees should be

20  included in the amount in controversy.

21       Cox was concerned about Phelps's false accusations against Cox when it first read his Reply

22  brief at the time it was served.  Cox should have filed a sur-reply at that time to clarify its position to

23  eliminate this confusion.  (*See* Idalski Dec. ¶ 5.)  Cox respectfully requests that the Court accept

24  Cox's explanation of this statement as it was intended, and that this misunderstanding should not be

25  a basis for awarding attorneys' fees.

26

27

28

IV.   **<u>CONCLUSION</u>**

For all of the foregoing reasons, Cox respectfully requests that this Court grant its Motion for Partial Reconsideration of this Court's Order Dated December 22, 2011 [Dkt. # 35] and deny Phelps's request for attorneys' fees.

DATED:  January 4, 2012.

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY

By:   */s/ Annette A. Idalski*
      Annette A. Idalski (admitted *pro hac vice* )

GORDON & REES

By:   */s/ Kathleen M. Paustian*
      Kathleen M. Paustian

Attorneys for Defendant COX COMMUNICATIONS LAS VEGAS, INC.

**PROOF OF SERVICE**

    I hereby certify that I am a citizen of the United States and am employed in Fulton County, where this mailing occurs.  I am over the age of eighteen years and not a party to the within entitled action; my business address is 191 Peachtree Street, N.E., 34th Floor, Atlanta, Georgia 30303.  On January 4, 2012, I served the document described as **COX COMMUNICATIONS LAS VEGAS, INC.'S MOTION FOR PARTIAL RECONSIDERATION OF THIS COURT'S ORDER DATED DECEMBER 22, 2011 [DKT. # 35]** on the interested party(ies) in this action as follows:

| | |
|---|---|
| Leon Greenberg | Christian Gabroy |
| LEON GREENBERG PROFESSIONAL CORPORATION | GABROY LAW OFFICES |
| 2965 South Jones Blvd. – Suite E-4 | 170 S. Green Valley Parkway, Suite 280 |
| Las Vegas, NV  89146 | Henderson, NV  89012 |
| T:  702.383.6085; F:  702.385.1827 | T:  702.259.7777; F:  702.259.7704 |
| Attorneys for Plaintiff | Attorneys for Plaintiff |

        **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Las Vegas, Nevada, in the ordinary course of business.

☐     **BY FEDERAL EXPRESS:**  I served said document(s) to be delivered on the same day to a courier or driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express.

X     **BY ELECTRONIC SERVICE:**  I served a true copy, with all exhibits, electronically on designated recipients via electronic transmission of said document(s) as provided under Federal Rules of Civil Procedure.

*/s/ Annette A. Idalski*
Annette A. Idalski
A Partner of CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY